UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>SCOTT M. BODNAR | Criminal No. 3:17cr157 (JBA)<br><br>November 13, 2020 |

**RULING DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

Defendant Scott Bodnar requests "that he is released from custody to Home Confinement for the remainder of his term due to the potential prevalence of COVID-19 at the institution for which he is currently residing" pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 (2020). (Mot. for Compassionate Release [Doc. # 389] at 1.) Defendant maintains that his chronic Lyme disease "presents him as having a compromised immune system" and thus puts him at a higher risk of experiencing severe COVID illness. (Def.'s Second Suppl. Mem. [Doc. # 394] at 15-16.) The Government opposes, arguing that Defendant "failed to establish extraordinary and compelling reasons for compassionate release." (Govt.'s Mem. in Opp. [Doc. # 395].) For the reasons that follow, Defendant's motion is DENIED.

**I. Background**

On May 2, 2019, Defendant Scott Bodnar pleaded guilty to conspiracy to distribute over 1,000 pounds of marijuana in violation of 21 U.S.C. § 846 and conspiracy to launder money in violation of 18 U.S.C. § 1956(a)(1)(A). (Def.'s Second Suppl. Mem. at 1; Mem. in Opp. at 4-5.) On September 4, 2019, the Court sentenced Defendant to concurrent 55- and 24-month incarceration sentences and a three-year term of supervised release. (Judgment [Doc. # 297].) Currently incarcerated at Lewisburg Federal Prison Camp, Defendant is scheduled to be released from Bureau of Prisons ("BOP") custody on September 9, 2022. FIND AN INMATE, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last accessed Nov. 9, 2020).

The Presentence Report reflects evidence that Defendant conspired to distribute more than 2,200 pounds of marijuana, but less than 6,600 pounds, and that he participated in jointly laundering over $6 million. (Presentence Report [Doc. # 264] at 13.)

Defendant is now 41 years old and maintains that he was "diagnosed with Chronic Lyme Disease" five years ago. (Def.'s Mot. at 4.) As evidence, Defendant submitted medical records indicating that he had previously been diagnosed with Lyme disease.[1] (Def.'s Medical Records [Doc. # 398].)

The Court assumes the parties' familiarity with the ongoing COVID-19 pandemic and its spread from person-to-person, especially between those who are in close contact with one another. HOW COVID-19 SPREADS, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fprepare%2Ftransmission.html  (last accessed Nov. 9, 2020).

The Centers for Disease Control and Prevention ("CDC") advises that "[a]dults of any age with the following conditions are at increased risk of severe illness from the virus that causes COVID-19: Cancer[,] Chronic kidney disease[,] COPD (chronic obstructive pulmonary disease)[,] Heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies[,] Immunocompromised state (weakened immune system) from solid organ transplant[,] Obesity (body mass index [BMI] of 30 kg/m$^2$ or higher but < 40 kg/m$^2$)[,] Severe Obesity (BMI ≥ 40 kg/m$^2$)[,] Pregnancy[,] Sickle cell disease[,] Smoking[, and] Type 2 diabetes mellitus." PEOPLE WITH CERTAIN MEDICAL CONDITIONS, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html  (last accessed Nov. 9, 2020). The CDC

---

[1] Defendant moves to seal his medical records. (Def.'s Mot. to Seal [Doc. # 399].) No opposition has been filed. The Court finds that Defendant's privacy interests in his medical records substantially outweigh the public's right of access to his medical records, and thus Defendant's Motion to Seal is granted.

2

also warns that "[b]ased on what we know at this time, adults of any age with the following conditions might be at an increased risk for severe illness from the virus that causes COVID-19: Asthma (moderate-to-severe)[,] Cerebrovascular disease (affects blood vessels and blood supply to the brain)[,] Cystic fibrosis[,] Hypertension or high blood pressure[,] Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines[,] Neurologic conditions, such as dementia[,] Liver disease[,] Overweight (BMI > 25 kg/m$^2$, but < 30 kg/m$^2$)[,] Pulmonary fibrosis (having damaged or scarred lung tissues)[,] Thalassemia (a type of blood disorder)[, and] Type 1 diabetes mellitus." *Id.* Moreover, "[a]mong adults, the risk for severe illness from COVID-19 increases with age, with older adults at highest risk." OLDER ADULTS, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last accessed Nov. 9, 2020).

Defendant "requested of the warden compassionate release and was denied on May 13, 2020." (Def.'s Second Suppl. Mem. at 6.) Defendant then filed this Motion for Compassionate Release on July 22, 2020. (Def.'s Mot. at 1.) The Government opposed Defendant's request on August 31, 2020. (Gov't's Mot. at 1.)

As of November 9, 2020, sixty-one Lewisburg USP inmates had tested positive for COVID-19, none of which are active infections. COVID-19, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last accessed Nov. 9, 2020). In addition, two staff members have active COVID-19 infections. *Id.* Lewisburg USP houses the Lewisburg Federal Prison Camp in which Defendant is incarcerated.

## II. Discussion

Defendant moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides,

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever

> is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Although incarcerated persons previously could only seek compassionate release upon motion of the BOP, the First Step Act of 2018 amended that provision to permit inmates to seek relief directly from the courts upon satisfaction of certain exhaustion requirements.

Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that

> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

Application Note 1 to that Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

Defendant argues that extraordinary and compelling reasons exist which justify his requested sentence reduction. (Def.'s Second Suppl. Mem. at 13-16.) Specifically, Defendant argues that his "Chronic Lyme Disease . . . presents him as having a compromised immune system" and thus places him at greater risk of severe COVID illness. (Def.'s Mem. at 1; *id.* at 19.) The Government argues that Defendant has failed to establish an extraordinary and

4

compelling reason for compassionate release since "he has not established that he suffers from any medical condition that puts him at greater risk of contracting or suffering from the virus." (Gov't's Mem. at 7-8.) The Government observes that although Defendant "focuses on Lyme disease, . . . he provides no medical documentation of the specific risks COVID-19 poses because of this prior medical condition." (*Id.* at 8.) In his Reply, Defendant clarified that he still experiences symptoms associated with Lyme disease, including joint pain, headaches, night sweats, brain fog, and fatigue, and provided quotations from four physicians who made statements published on the Internet that he argues indicate that Lyme disease increases one's risk of experiencing severe illness from COVID.[2] (Reply [Doc. # 397] at 2-4; Bodnar Aff., Exh. 1 to Reply [Doc. # 397-1].)

The Court finds that although Defendant has provided credible evidence of a Lyme disease diagnosis, he has not provided sufficient evidence to persuade the Court that his

---

[2] Defendant quotes Dr. Casey Kelley, M.D., who stated that those with Lyme disease should take steps to "boost[] the immune system so it can fight off infection." (Def.'s Reply at 2-3.) This quotation does not indicate that those with Lyme disease have weakened immune systems, only that boosting the immune system is helpful to those with Lyme disease. Defendant next quotes Dr. Terry Gehlhausen, D.O., who wrote that "experts are still researching" the relationship between Lyme and the illness caused by COVID-19. (*Id.*) This quotation does not indicate any clear evidence that individuals with Lyme disease are at an increased risk of severe COVID illness. Defendant then quotes Dr. Jill Carnahan, M.D., who states that "Lyme disease . . . can weaken your immune system and make you more susceptible to catching contagious illnesses – like the coronavirus." (*Id.*) Although Dr. Carnahan indicates that Lyme disease *can* weaken the immune system, she does not suggest that is true for all those with Lyme disease, let alone Defendant specifically. Defendant finally quotes Dr. Omar Morales, M.D., who states that "because Lyme disease is autoimmune, contracting the Coronavirus could put [patients] at higher risk for complications." (*Id.*) But the CDC does not list those with autoimmune conditions as at increased risk or potentially at increased risk of experiencing severe illness from COVID. Moreover, autoimmune conditions do not cause a weakened immune system, though they are often treated with immunosuppressive drugs (which the CDC identifies as increasing one's risk of severe illness from COVID-19). *What You Need to Know About Being Immunocompromised During COVID-19*, PennMedicine (May 13, 2020), https://www.pennmedicine.org/updates/ blogs/health-and-wellness/2020/may/what-it-means-to-be-immunocompromised. Defendant reports that he does not take any medication to treat his Lyme disease. (Def.'s Second Suppl. Mem. at 14.)

5

Lyme disease diagnosis constitutes current "extraordinary and compelling circumstances" that would make compassionate release appropriate. Defendant indeed concedes that "the Centers for Disease Control do not specifically list Lyme disease as a factor that places its sufferers at greater risk from the COVID virus." (Def.'s Second Suppl. Mem. at 15.) Although Defendant argues that his condition still places him at greater risk because Lyme disease weakens the immune system, (*id.*), he provides no evidence that any treating physician has found his immune system to be compromised so as to make him more vulnerable as he claims. Generalized statements from a few doctors who have never treated Defendant or reviewed his medical records are insufficient to justify compassionate release. This is particularly true since neither the Centers for Disease Control and Prevention, nor any major public health authority has recognized Lyme disease as putting or potentially putting one at a greater risk of severe COVID. Without any compelling authority placing Defendant at a greater risk of severe COVID, his circumstances are not "extraordinary and compelling" such that compassionate release is warranted under the CARES Act.

**Conclusion**

For the foregoing reasons, Defendant's Motion for Compassionate Release [Doc. # 389] is DENIED. Defendant's Motion to Seal [Doc. # 399] is GRANTED.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 13th day of November 2020.